UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AUSTIN JEREMIAH HOLM,<br><br>Plaintiff,<br><br>v.<br><br>J. GALIPEAU, et al.,<br><br>Defendants. | CAUSE NO. 3:24-CV-384-GSL-JEM |

<u>OPINION AND ORDER</u>

Austin Jeremiah Holm, a prisoner without a lawyer, filed a complaint. ECF 2. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Holm alleges he injured his right knee on January 27, 2022, and he takes issue with the medical care he has received at the Westville Correctional Facility since then. He was initially seen on February 16, 2022, and the medical staff referred him to the doctor. He wrote the medical director at the time, Ms. Livers, and asked for an MRI since his knee was still painful and swollen. She wrote back and told him to fill out a healthcare request. Holm did so on July 1, 2022, and he was seen on July 12, 2022. Although it's not entirely clear when, Holm had received an x-ray prior to that time because the results—which showed "knee joint effusion"—were discussed at that appointment, and he was given an Ace bandage to wear. ECF 2 at 2. He filed a grievance on July 21, 2022, regarding the delay in treatment. The grievance was denied, and he was told to fill out another healthcare request, so he did on August 23, 2022. Holm admits he was "doing physical therapy" that had been previously prescribed by the medical staff during this time period, but he claims his knee was still swollen and painful. *Id.*

Holm did not request additional medical care for nearly nine months, at which point he submitted another healthcare request on May 24, 2023, because his knee was swollen, and he was in pain. He was seen by medical staff a few days later on June 1, 2023. They gave him Tylenol, which Holm claims didn't work. On June 20, 2023, he wrote Ms. Bridegroom, whom Holm describes as the new medical director, and explained that he was in pain and that his knee had been swollen for a year and a half. She wrote back and noted he was seen on June 14, 2023, and that an ultrasound for his knee had been ordered. On July 15, 2023, Holm met with Dr. Liaw to go over those

ultrasound results which showed "normal knee, no abnormal fluids or anything found in my us. It went good." *Id*. at 3. On July 21, 2023, Holm filled out another healthcare request slip. He was evaluated several days later by medical staff on July 27, 2023. They documented his complaints of pain and swelling, noted the normal ultrasound results, and he was given Tylenol and referred to a doctor. On October 20, 2023, he filled out another medical request, and he was seen by medical staff on October 24, 2023. They told him his request for an MRI was denied.[1] He claims medical is "steadily making me suffer in pain and knowingly not treating my injured knee." *Id*. Holm has sued Warden J. Galipeau and Ms. Bridegroom for monetary damages and to receive "any further treatment on [his] right knee." *Id*. at 4.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[T]he Eighth Amendment does not require that prisoners receive

---

[1] However, Holm also attaches a request for interview he sent to Ms. Bridegroom dated October 19, 2023, which includes a response from a nurse stating, "pt going out to ortho in December." ECF 2-1 at 2.

3

unqualified access to health care." (citation and quotation marks omitted)). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Because there is no one right way to practice medicine in the prison setting, courts must normally "defer to medical professionals' treatment decisions . . .." *Walker*, 940 F.3d at 965. At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Additionally, persisting with a course of treatment known to be ineffective can constitute deliberate indifference. *Berry*, 604 F.3d at 441. However, for a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). It is clear that "[m]ere negligence will not suffice, and deliberate indifference is not coextensive with medical malpractice." *Jackson v. Esser*, 105 F.4th 948, 961–62 (7th Cir. 2024) (citing *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021)); *see also Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021) ("[D]eliberate indifference requires more than negligence or even gross

negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.") (internal quotation marks and citation omitted).

> Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim. Instead, a prisoner must demonstrate that the medical professional's so inadequate that it demonstrated an absence of professional judgment. In other words, to show that [a medical professional] was deliberately indifferent, [the plaintiff] must demonstrate that no minimally competent professional would have acted as she did.

*Jackson*, 105 F. 4th at 961–62 (quotation marks and internal citations omitted).

As an initial matter, the court notes Holm states he placed his complaint into the prison mail system on September 26, 2023, at 1:00 P.M. This is problematic because Holm mentions events occurring *after* that date through the end of October 2023, so that statement—made under penalty of perjury—appears to be patently false. Additionally, the court did not receive his complaint until May 14, 2024, so there is a gap of almost seven months from the last factual allegations described in the complaint until it was actually filed. Accordingly, the court cannot find that Holm is currently failing to receive constitutionally adequate treatment for his knee, so any implied request for permanent injunctive relief against the Warden in his official capacity will be dismissed.

With regard to Warden Galipeau in his individual capacity, liability under 42 U.S.C. § 1983 is based on personal responsibility, and the Warden cannot be held liable for damages solely because he holds a supervisory position at the Westville Correctional Facility. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Supervisory prison officials can be held liable for a constitutional violation only if they "know about the conduct and facilitate it,

5

approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019.) The Warden is not mentioned by name in the narrative section of the complaint, and there are no allegations from which the court can plausibly infer he was personally involved in Holm's medical care or otherwise turned a blind eye to his needs. The Warden was entitled to defer to trained medical professionals regarding the appropriate treatment for Holm's knee problems unless he had specific reason to know he was being mistreated, but Holm has not included any allegations to satisfy this standard. *Burks*, 555 F.3d at 596. Thus, he has not stated a plausible claim for monetary damages against the Warden.

  Holm also sues Ms. Bridegroom. However, the allegations against her are sparse. He doesn't allege she was aware of his situation until he initially wrote to her on June 20, 2023. Her response acknowledged he had been seen by medical the week before, and that an ultrasound had been ordered. Holm was subsequently seen by Dr. Liaw to go over the ultrasound results which were described as "normal." When he filled out another healthcare slip the following week, he was seen by medical staff, given Tylenol, and referred to the doctor. Although Holm claims he was told in October that his request for an MRI was denied, an attached request for interview indicates he was scheduled to be seen by an orthopedic doctor in December 2023. Holm doesn't indicate whether that visit occurred, as the allegations in the complaint cease as of late October 2023. Moreover, considering Holm's overall treatment—which include being evaluated

6

by medical staff in response to his requests,[2] being given an x-ray and an Ace bandage, being prescribed physical therapy and Tylenol, and receiving an ultrasound of his knee which showed normal findings—"the records do not show a pattern of deliberate indifference to [Holm's] serious medical needs." *Walker*, 940 F.3d at 965. Based on these facts, it cannot be plausibly inferred that Ms. Bridegroom was liable for violating the Eighth Amendment. *See e.g., id*. (prisoners "not entitled to demand specific care"); *Johnson*, 433 F.3d at 1013 ("[T]he Eighth Amendment does not require that prisoners receive unqualified access to health care." (citation and quotation marks omitted)). Thus, the claims against her will be dismissed.

This complaint does not state a claim for which relief can be granted. If Holm believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

Finally, Holm filed a motion to proceed in forma pauperis. ECF 3. The motion—which was received by the court and filed on May 14, 2024—is dated September 26,

---

[2] His requests were infrequent—sometimes separated by many months—but it appears when he did submit a request, he was seen by medical and/or received a response in a timely manner.

2023, but the attached ledger only reflects transactions from July 29, 2021, to March 3, 2023. Without an updated ledger, the court cannot determine what amount, if any, must be assessed as an initial partial filing fee. *See* 28 U.S.C. § 1915(a)(2) and 28 U.S.C. § 1915(b)(1). Accordingly, the motion will be denied without prejudice. If Holm wants to continue with this lawsuit, he needs to resolve his filing fee status as described below.

For these reasons, the court:

(1) DENIES the motion to proceed in forma pauperis without prejudice (ECF 3);

(2) GRANTS Austin Jeremiah Holm until **August 30, 2024**, to either pay the $405 filing fee up front <u>or</u> refile an in forma pauperis motion seeking to pay the fee over time, accompanied by an updated copy of his inmate trust fund ledger detailing his transactions for the past six months;

(3) GRANTS Austin Jeremiah Holm until **August 30, 2024**, to file an amended complaint as described above; and

(4) CAUTIONS Austin Jeremiah Holm if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 29, 2024

/s/Gretchen S. Lund  
JUDGE  
UNITED STATES DISTRICT COURT